UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Jeffrey E. Jones,

                      Plaintiff,

     v.

Commissioner of Social Security,[1]

                      Defendant.

**Decision and Order**

17-CV-61 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, page numbers hereafter quoted in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 15, 16.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

---

[1] The Clerk of the Court is directed to conform the caption of the case to the caption of this decision.

substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that his impairments prevent him from returning to his previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and

3

mental demands of the work that he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff argues that the "ALJ did not follow the law in choosing to give greater weight to the opinions of the non-examining State Agency Review Physician than that of the psychological consultative examiner, Christine Ransom, Ph.D. This error was harmful because Dr. Ransom's mental limitations for Plaintiff are significantly stronger than those found in the ALJ's Residual Functional Capacity ('RFC'), and would have warranted a finding of disabled." (Dkt. No. 15-1 at 17.) Plaintiff notes that "[r]egardless of whether Dr. Ransom, the consultative examiner, was aware of Plaintiff's history of drug and alcohol abuse, she had the opportunity to personally observe the Plaintiff. She noted that his speech was slow and halting, and his voice was moderately to markedly dysphoric and withdrawn. (Tr. 302). The Plaintiff expressed a moderately markedly dysphoric, moderately tense and withdrawn affect during the evaluation. (Tr. 302). Even these seemingly small observations offer greater proof of Plaintiff's disabling mental conditions than anything the psychological consultant, who never met or saw the Plaintiff, could attest to." (*Id.* at 19.) The Commissioner responds that "Dr. Ransom's extreme functional limitations were inconsistent with her own notes that Plaintiff was cooperative, fully oriented, and related adequately. Tr. 302. Dr. Ransom also reported that Plaintiff had coherent and goal-directed thoughts with no evidence of hallucinations, delusions, or paranoia, only mildly impaired attention, memory, and concentration, and good insight and judgment." (Dkt. No. 16-1 at 16.) As a preliminary matter, "an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) (citations omitted). In addition to the

4

inconsistency within Dr. Ransom's notes, the record contains instances of examinations when plaintiff was well oriented with good eye contact, clear speech, intact memory, and average intelligence. [291.] *Cf. Wood v. Comm'r*, No. 615CV1030GTSWBC, 2016 WL 7077862, at *4 (N.D.N.Y. Oct. 27, 2016) (Commissioner affirmed where, *inter alia*, "Plaintiff's speech was intelligible; his expressive and receptive language was adequate; and his thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking."), *report and recommendation adopted sub nom.* Wood v. Colvin, No. 615CV1030GTSWBC, 2016 WL 7053498 (N.D.N.Y. Dec. 5, 2016). The record further contains indications that plaintiff failed to participate in counseling and inpatient treatment programs. [102.] *Cf. Charbonneau v. Astrue*, No. 2:11-CV-9, 2012 WL 287561, at *8 (D. Vt. Jan. 31, 2012) (failure "to follow prescribed treatment without a good reason" weighs against a finding of disability) (citations omitted). Under these circumstances, discounting Dr. Ransom's medical source statement fell within the ALJ's discretion.

Plaintiff next argues that the ALJ failed to develop the record to the degree required here:

> The ALJ failed to develop the record in two ways. First, the ALJ should have requested a new psychological consultative examination if he was unable to use the one provided. The ALJ afforded "no weight" to Dr. Ransom's opinion because (1) "the claimant failed to report his history of drug or alcohol use" and (2) "the opinion … is based on a one-time evaluation and conflict with normal psychological evaluations recorded by treating mental health professionals." (Tr. 21). Notably, there were no other psychological opinions completed by examining or treating physicians. Additionally, the ALJ should have made sure that the cardiologist completed the Medical Source Statement, because without this information, the ALJ had no way to know what physical limitations Plaintiff's cardiac condition would bring, especially given that all of his cardiac treatment occurred after the date of the physical consultative examination. In the alternative, the ALJ could have ordered a new physical consultative examination.

(Dkt. No. 15-1 at 21; *see also* Dkt. No. 19 at 3.) The Commissioner counters that "the ALJ was under no obligation to obtain a medical source statement from Plaintiff's cardiologist. It is also worthy of note that the ALJ tried to obtain a medical source statement from Plaintiff's cardiologist,

5

but Plaintiff's cardiologist did not complete the medical source statement. What's more, the ALJ kept the record open for 30 days after Plaintiff's hearing to obtain additional cardiology records." (Dkt. No. 16-1 at 18.) Plaintiff's view is more consistent with the ALJ's obligations. "In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. § 423(d)(5)(B). "Every reasonable effort means that we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 404.1512(b)(1)(i); *id.* § 416.912(b)(1)(i). Here, the record shows one initial request for evidence from plaintiff's cardiologist [400] but no evidence of a follow-up request for a medical source statement. Additionally, while some of the cardiology records indicate that plaintiff was "doing well" [383] and "clinically stable" [387], those same records confirm that he had a history of exertional shortness of breath. [391.] While there is no *per se* requirement for a medical source statement in every instance, *see Swiantek v. Comm'r*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order), a medical source statement from the cardiologist would have been worth a follow-up request here. *Cf. Beller v. Astrue*, No. 12 CV 5112 VB, 2013 WL 2452168, at *18 (S.D.N.Y. June 5, 2013) (remand for further assessments from treating sources).

## III.  CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 16). The Court grants plaintiff's cross-motion (Dkt. No. 15) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: November 28, 2018